# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY MARTZ,

               Plaintiff,

      v.

POLARIS SALES INC.,

               Defendant.

No. 4:22-CV-01390

(Chief Judge Brann)

## MEMORANDUM OPINION

### JANUARY 3, 2024

## I.      BACKGROUND

In September 2022, Larry Martz filed a complaint against Kolpin Outdoors, Inc.; Polaris Sales, Inc. ("Polaris"), was later substituted as the proper party.[1] In the incident precipitating the complaint, Martz's wife lost control of her ATV, which had the "Kolpin Throttle Master" installed, and died in a fatal accident.[2] Martz brought two claims against Polaris under a products liability theory, partially suing under the theory that the Kolpin Throttle Master's instructions and warnings were defective.[3] Polaris filed its answer in February 2023, and the parties proceeded to discovery.[4] In November 2023, Martz's counsel sent a letter to this Court regarding

---

[1]   Doc. 1, Doc. 6.
[2]   Doc. 1 ¶¶1, 22-28.
[3]   *Id.* ¶¶30, 48.
[4]   Doc. 11.

a discovery dispute.[5] Following a status conference, I ordered counsel to submit briefing on this issue on December 13, 2023.[6]

## II.    FACTUAL BACKGROUND

The Kolpin Throttle Master's instructions have gone through several iterations, with Revision 3 and Revision 4 containing substantial differences.[7] Polaris's October 2023 privilege log indicated that a report, titled "Kolpin Throttle Master Instructions Review," (the "Instructions Review"), was authored before Revision 4 of the instructions was adopted.[8] To support its assertion that the Instructions Review is protected by work product privilege, Polaris sets out a timeline of the report; Martz largely offers the same chronology in his simultaneously filed brief.

More than 13 months after Martz's ATV accident, a similar incident occurred in November 2021.[9] This incident mirrors Martz's incident: a child operating an ATV with a Kolpin Throttle Master installed became injured when the Throttle Master became stuck in the open throttle position, causing the ATV to accelerate uncontrollably and crash into a tree.[10] Polaris became aware of the incident on December 20, 2021, when the child's father (the "ATV Owner") provided notice to

---

[5]    Doc. 32.
[6]    Doc. 34, Doc. 35.
[7]    Doc. 36 at 9.
[8]    Doc. 32 at 1-2.
[9]    Doc. 36 at 3.
[10]   Doc. 36 at 3-4; Doc. 36-2, McAlpine Declaration ¶¶ 3-4.

Polaris.[11] The "incident description/customer statement" Martz obtained during discovery states:

> The EU stated that his reason for contacting Kolpin was an alert for a probable product defect and not compensation. He has been compensated for the loss of the ATV by his insurance carrier (State Farm) and his son has left the hospital and is reportedly fine except for a scar. The insurer has taken custody of the ATV . . . . He purchased the "Throttle Master" from Amazon and installed it himself to make it easier for his wife to operate the ATV.[12]

In response to this communication, Polaris opened a claims file and investigated the incident in January.[13] A "peer review, during which Polaris engineers and lawyers review[ed] the results of the investigation," occurred in January 2022.[14]

On May 9, 2022, Polaris closed the ATV Owner's claims file because there was no further contact from the ATV Owner following its investigation and Peer Review.[15] Melissa McAlpine, Polaris's in-house Legal Director, participated in an additional internal discussion about Polaris's investigation on June 9, 2022.[16]

On June 17, 2022, McAlpine engaged outside consultants in "human factors engineering" at Applied Safety and Ergonomics ("ASE"), Jared Frantz and Charles Burhans, Sr., to evaluate the Kolpin Throttle Master Product Instructions.[17] This

---

[11] *Id.*
[12] Doc. 37 at 3.
[13] Doc. 36 at 4; Doc. 36-2, McAlpine Declaration at ¶5; 37 at 3.
[14] Doc. 36 at 4; Doc. 36-2, McAlpine Declaration ¶5.
[15] Doc. 36 at 8; Doc. 36-2, McAlpine Declaration ¶9.
[16] Doc. 36 at 4; Doc. 36-2, McAlpine Declaration ¶5.
[17] Doc. 36 at 4; Doc. 36-2, McAlpine Declaration ¶¶ 6-8.

ultimately led to the Instructions Review, which was completed on June 28, 2022.[18]
When Frantz completed the Instructions Review, he sent it to Burhans, McAlpine,
and John Winkler, a Polaris employee working on Kolpin products.[19] According to
Martz, the Instructions Review was never placed in the closed claims file belonging
to the ATV Owner.[20] After the report, the fourth version of the Kolpin Throttle
Master Instructions was issued, which incorporated substantial revisions.[21] They
were incorporated into production on September 2, 2022.[22]

## III.   ANALYSIS

Material is privileged from discovery under the work product doctrine if (1)
litigation could reasonably have been anticipated when the document was created
and (2) the document was prepared primarily for the purpose of litigation.[23] Here,
because the facts do not clearly establish the primary purpose of the Instructions
Review, the Court cannot apply this test; neither party's assertions regarding the
report are supported.

### A.   Polaris's Arguments

Polaris offers an affidavit from McAlpine, in which she describes the reason
for requesting the Instructions Review, as well as its own characterizations of the

---

[18]   Doc. 36 at 5; Doc. 36-2, McAlpine Declaration ¶10.
[19]   *Id.*
[20]   Doc. 37 at 4.
[21]   *Id.*
[22]   *Id.*
[23]   *Hickman v. Taylor*, 329 U.S. 495, 508 (1947); Fed. R. Civ. P. 26(b)(3); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990).

Case 4:22-cv-01390-MWB    Document 38    Filed 01/03/24    Page 5 of 9


Instructions Review's contents. Neither shows that the Instructions Review was prepared primarily in anticipation of litigation from the ATV Owner.

I find unpersuasive McAlpine's declaration that "[a]nticipation over the prospect of potential litigation as a result of the November 23, 2021 Incident was a primary factor behind retaining Jared Frantz and Charles Burhans, Sr. of ASE to conduct the Throttle Master Product Instructions review."[24] First, this kind of "blanket statement" is conclusory.[25] It is an assertion of the legal standard, but it does not explain why anticipation of litigation was "a primary factor" behind retaining ASE. Second and more importantly, the work product test does not only hinge upon McAlpine's state of mind—a "unilateral belief" that litigation is coming is insufficient to assert a work product privilege.[26] As stated by the United States Court of Appeals for the Third Circuit:

> Only by looking to the state of mind of the party . . . ordering preparation of the document, can we determine whether this test has been satisfied . . . . The rule is limited, however, by the requirement that the preparer's anticipation of litigation be objectively reasonable . . . . [T]he test should be whether in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." [27]

---

[24]  McAlpine Declaration, Doc. 36-2 ¶8.

[25]  *See Jones v. Swepi L.P.*, No. 2:19-cv-00050, 2020 U.S. Dist. LEXIS 200238, at *3 (W.D. Pa. Oct. 28, 2020); *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 246 F.R.D. 239, 246 (W.D. Pa. 2007) ("Blanket assertions are not enough to shift the burden to the party seeking discovery.").

[26]  *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993).

[27]  *Id.*

McAlpine's declaration does not definitively establish her state of mind when requesting the Instructions Review or establish the nature of its contents. Moreover, if McAlpine anticipated litigation from the ATV Owner, that anticipation must still be objectively reasonable.

Despite Polaris's denials, the parties agree that the Instructions Review was prepared at least in part for a business purpose. Martz highlights that, as Polaris admitted in an answer to Martz's Interrogatories, the Fourth Revision of the Kolpin Throttle Master Product Instructions was incorporated into production on September 2, 2022, shortly after the Instructions Review.[28] Polaris admits that it regularly conducts such reviews for business purposes, but states in its brief that "this particular review was undertaken at the request of Polaris's in-house counsel, primarily in anticipation of litigation related to the November 23, 2021 Incident."[29]

Yet, Polaris also states that the Instructions Review was "used to evaluate the adequacy of and provide recommendations regarding potential revisions to Polaris's Product Instructions for the Throttle Master."[30] This is clearly a business purpose. And so is one of Polaris's other stated purposes for the Instructions Review: "helping Polaris evaluate potential litigation relating to the Kolpin Throttle Master."[31] For the work product doctrine to apply, the threat of litigation must be specific rather than

---

[28] Doc. 37 at 4.
[29] Doc. 36 at 7.
[30] *Id.* at 2.
[31] *Id.*

generalized, meaning that revising the instructions to prevent future litigation from materializing from unknown persons is insufficient.[32]

Based upon the information provided by the parties, the Instructions Review was motivated at least in part by a business purpose. But even accepting that the threat of litigation from the ATV Owner partially motivated the Instructions Review, the Court cannot ascertain what role Polaris's anticipation of litigation from the ATV Owner played, or whether it played a *primary* role.

Martz's interpretation of the report is that it was prepared "as a mitigative response to a prior safety incident."[33] As this asserted purpose hedges closely to Federal Rule of Evidence 407, Polaris objects that the Instructions Review would be a subsequent remedial measure under Martz's interpretation, and so inadmissible in any event.[34] However, evidence "need not be admissible in evidence to be discoverable."[35] Be that as it may, the admissibility of the Instructions Review, notwithstanding its potential remedial nature, would depend upon the purpose for which Martz seeks to admit it.[36]

---

[32]  *See Martin*, 983 F.3d at 1260; *In re: Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003) ("[A] party must show that there existed an identifiable specific claim of impending litigation when the materials were prepared.").

[33]  Doc. 37 at 2.

[34]  Doc. 36 at 9-19.

[35]  Fed. R. Civ. P. 26(b)(1).

[36]  *See* Fed. R. Evid. 407 ("But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.").

**B.    Martz's Arguments**

Yet on the other hand, Martz's version of events—that the Instructions Review was conducted solely in the ordinary course of business—is not definitively established either. I reject Martz's argument that because the ATV Owner was compensated for his injury and stated that he would not sue, that litigation could not reasonably been anticipated. At the time the Instructions Review was requested from ASE, the ATV Owner's insurance company could have sued Polaris through equitable subrogation. Insurance companies often seek reimbursement from responsible parties on a victim's behalf. Similarly, the fact that the ATV Owner's claims file was closed is not determinative either, as Polaris asserts it closed the file because the ATV Owner stopped responding to requests for information.

I also reject Martz's contention that because the Instructions Review was requested six months after the ATV Owner's complaint, that it could not have been prepared in anticipation of litigation. Six months is not a long time in the litigation context, and the statute of limitations on Martz's potential claim had not yet expired within those six months. The timeline of events also shows continuous activity regarding the ATV Owner's incident. Here, after the December 23, 2021 correspondence with the ATV Owner, a peer review occurred in January 2022, Polaris closed the ATV owner's case on May 9, 2022, additional internal discussion occurred about the case on June 8, 2022, and the review was requested on June 17, 2022. Rather than being sharply disconnected or remote in time from Polaris's

investigation of the ATV Owner's claim, the review was requested following a continuous investigation.

## IV.   CONCLUSION

In conclusion, even giving Polaris the benefit of the doubt, the role of litigation from the ATV Owner in the Instructions Review remains unclear. So this Court cannot determine whether the Instructions Review was prepared primarily for the business purpose of revising Polaris's instructions, or primarily in anticipation for litigation with the ATV Owner, without receiving the document itself for *in camera* review. Polaris must also provide the Court with any documents relating to McAlpine's original request for ASE to author the report.[37] To that end, I remind Polaris that "the party invoking the work product doctrine bears the burden of establishing both parts of the Court's inquiry."[38]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[37] If no written request was made, Polaris must provide some record corroborating McAlpine's intention in commissioning the ASE report.

[38] *Swepi*, 2020 U.S. Dist. LEXIS 200238, at *3 (citing *Highland Tank & Mfg. Co.*, 246 F.R.D. at 246).