# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY MARTZ, | No. 4:22-CV-01390 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| POLARIS SALES INC., | |
| Defendant. | |

## MEMORANDUM OPINION

### JANUARY 18, 2024

## I.   BACKGROUND

In September 2022, Larry Martz filed a complaint against Kolpin Outdoors, Inc.; Polaris Sales, Inc. ("Polaris"), was later substituted as the proper party.[1] In the incident precipitating the complaint, Martz's wife lost control of her ATV, which had the "Kolpin Throttle Master" installed, and died in a fatal accident.[2] Martz brought two claims against Polaris under a products liability theory, partially suing under the theory that the Kolpin Throttle Master's instructions and warnings were defective.[3] Polaris filed its answer in February 2023, and the parties proceeded to discovery.[4] In November 2023, Martz's counsel sent a letter to this Court regarding a discovery dispute over a document Polaris claimed was protected by the work

---

[1] Doc. 1, Doc. 6.
[2] Doc. 1 ¶¶1, 22-28.
[3] *Id.* ¶¶30, 48.
[4] Doc. 11.

product doctrine.[5] Following a status conference, I ordered counsel to submit briefing on this issue on December 13, 2023.[6]

The parties dispute the discoverability of a document labeled "Kolpin Throttle Master Instructions Review" (the "Instructions Review").[7] This document was prepared by outside consultant Applied Safety and Ergonomics ("ASE") at the request of Melissa McAlpine, Polaris's in-house counsel.[8]

On January 3, 2024, I issued a memorandum opinion.[9] I found that I could not determine what role the anticipation of litigation played in the Instructions Review based upon the arguments presented by counsel.[10] I therefore requested that Polaris send the disputed document to this Court for *in camera* review, together with any documents relating to Polaris's original request that ASE author the instructions review.[11] Polaris complied and sent these documents on January 10, 2024.[12]

As I noted in my recent memorandum opinion, if Polaris made no written request to ASE, it must provide some other record corroborating McAlpine's intention in commissioning the report.[13] Polaris ultimately sent a declaration and an email containing the Instructions Review, explaining that there was no written

---

5   Doc. 32.
6   Doc. 34, Doc. 35.
7   Doc. 32.
8   Doc. 36-2, McAlpine Declaration ¶¶6, 8.
9   Doc. 38.
10  *Id.* at 9.
11  Doc. 40.
12  Doc. 41.
13  Doc. 38 at 9 n. 37.

retention agreement with ASE for the Instructions Review and that McAlpine verbally requested that ASE conduct it during a meeting.[14] Having received these documents, I am now able to evaluate the primary purpose of the Instructions Review more fully.

## II.   FACTUAL BACKGROUND

The Kolpin Throttle Master's instructions have gone through several iterations, with Revision 3 and Revision 4 containing substantial differences.[15] Polaris's October 2023 privilege log indicated that a report, titled "Kolpin Throttle Master Instructions Review," was authored before Revision 4 of the instructions was adopted.[16] To support its assertion that the Instructions Review is protected by work product privilege, Polaris sets out a timeline of the report; Martz largely offers the same chronology in his simultaneously filed brief.

More than 13 months after Martz's ATV accident, a similar incident occurred in November 2021.[17] This incident mirrors Martz's incident: a child operating an ATV with a Kolpin Throttle Master installed became injured when the Throttle Master became stuck in the open throttle position, causing the ATV to accelerate uncontrollably and crash into a tree.[18] Polaris became aware of the incident on

---

[14]   Doc. 40 ¶9.
[15]   Doc. 36 at 9. I reproduce the factual background found in my prior memorandum opinion here. Information gleaned from my review of Polaris's *in camera* submissions is incorporated into my subsequent analysis.
[16]   Doc. 32 at 1-2.
[17]   Doc. 36 at 3.
[18]   Doc. 36 at 3-4; Doc. 36-2, McAlpine Declaration ¶¶ 3-4.

December 20, 2021, when the child's father (the "ATV Owner") provided notice to Polaris.[19] The "incident description/customer statement" Martz obtained during discovery states:

> The EU stated that his reason for contacting Kolpin was an alert for a probable product defect and not compensation. He has been compensated for the loss of the ATV by his insurance carrier (State Farm) and his son has left the hospital and is reportedly fine except for a scar. The insurer has taken custody of the ATV . . . . He purchased the "Throttle Master" from Amazon and installed it himself to make it easier for his wife to operate the ATV.[20]

In response to this communication, Polaris opened a claims file and investigated the incident in January.[21] A "peer review, during which Polaris engineers and lawyers review[ed] the results of the investigation," occurred in January 2022.[22]

On May 9, 2022, Polaris closed the ATV Owner's claims file because there was no further contact from the ATV Owner following its investigation and Peer Review.[23] Melissa McAlpine, Polaris's in-house Legal Director, participated in an additional internal discussion about Polaris's investigation on June 9, 2022.[24]

On June 17, 2022, McAlpine engaged outside consultants in "human factors engineering" at Applied Safety and Ergonomics ("ASE"), Jared Frantz and Charles

---

19   *Id.*
20   Doc. 37 at 3.
21   Doc. 36 at 4; Doc. 36-2, McAlpine Declaration at ¶5; 37 at 3.
22   Doc. 36 at 4; Doc. 36-2, McAlpine Declaration ¶5.
23   Doc. 36 at 8; Doc. 36-2, McAlpine Declaration ¶9.
24   Doc. 36 at 4; Doc. 36-2, McAlpine Declaration ¶5.

Burhans, Sr., to evaluate the Kolpin Throttle Master Product Instructions.[25] This ultimately led to the Instructions Review, which was completed on June 28, 2022.[26] When Frantz completed the Instructions Review, he sent it to Burhans, McAlpine, and John Winkler, a Polaris engineer working on Kolpin products.[27] According to Martz, the Instructions Review was never placed in the closed claims file belonging to the ATV Owner.[28] After the report, the fourth version of the Kolpin Throttle Master Instructions was issued, which incorporated substantial revisions.[29] They were incorporated into production on September 2, 2022.[30]

### III.   DISCUSSION

#### A.   Law

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."[31] Material is privileged from discovery under the work product doctrine if a party requested it

---

[25] Doc. 36 at 4; Doc. 36-2, McAlpine Declaration ¶¶ 6-8.
[26] Doc. 36 at 5; Doc. 36-2, McAlpine Declaration ¶10.
[27] Id.
[28] Doc. 37 at 4.
[29] Id.
[30] Id.
[31] Fed. R. Civ. P. 26(b)(1).

in anticipation of litigation and that anticipation was objectively reasonable.[32] "[T]he test should be whether in light of the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."[33] Work product protection extends beyond the litigation for which the materials were prepared.[34] While relevant, the involvement of legal counsel in requesting or preparing documents does not establish that they are prepared in anticipation of litigation.[35]

"[T]he doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself."[36] For the work product doctrine to apply, the threat of litigation must be specific rather than generalized; the desire to prevent future litigation from materializing from unknown persons is insufficient.[37] "Materials assembled in the ordinary course of business . . . are not under the qualified immunity provided" by the work product doctrine.[38] "The party invoking

---

[32] *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990); Fed. R. Civ. P. 26(b)(3).
[33] *Martin* at 1260.
[34] *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d Cir. 1979).
[35] *In re B & C Seafood*, 431 F.Supp. 3d at 537.
[36] *U.S. v. Nobles*, 422 U.S. 225, 239 (1975).
[37] *See Martin*, 983 F.3d at 1260; *In re: Gabapentin Patent Litig.*, 214 F.R.D. 178, 184 (D.N.J. 2003) ("[A] party must show that there existed an identifiable specific claim of impending litigation when the materials were prepared.").
[38] Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment.

the work product doctrine bears the burden of establishing both parts of the Court's inquiry."[39]

"Dual purpose" documents are documents not prepared exclusively for litigation.[40] *In camera* review is generally required to determine if such documents are entitled to work product protection.[41] Although some courts have analyzed dual purpose documents by asking whether they were produced "primarily" because of litigation,"[42] the majority standard adopted by the United States Court of Appeals for the Third Circuit asks whether "the document can be fairly said to have been prepared or obtained because of the prospect of litigation."[43] The "because of" standard asks not what the primary purpose of the document is,[44] but whether under the totality of the circumstances, it can be fairly said that the document would not have been created in substantially similar form but for the prospect of litigation.[45]

---

[39] *Swepi*, 2020 U.S. Dist. LEXIS 200238, at *3 (citing *Highland Tank & Mfg. Co.*, 246 F.R.D. at 246).

[40] *UPMC v. CBIZ, Inc.*, No. 3:16-cv-204, 2018 U.S. Dist. LEXIS 52810, at *22 (W.D. Pa. Mar. 29, 2018).

[41] *McFarlane v. First Unum Life Ins. Co.*, 231 F.Supp. 3d 10, 18 (S.D.N.Y. 2017).

[42] *See, e.g.*, *United States ex rel. Donnelly v. Wells Fargo Bank, N.A.*, 165 F.Supp. 3d 1319, 1325-26 (N.D. Ga. 2015); *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

[43] *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979); *see also W Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico*, 300 F.R.D. 48 (D.P.R. 2014) (applying the "because of" standard); *United States v. Deloitte LLP*, 610 F.3d 129, 136-37 (D.C. Cir. 2010) (reviewing majority and minority approaches to dual purpose documents).

[44] Although I stated in my prior memorandum opinion that the work product doctrine hinges on a document's "primary" purpose, I had no need to consider the applicable dual-purpose standard at that time. Without access to the documents for *in camera* review, applying either test would have resulted in the same outcome.

[45] *Cung Le v. Zuffa*, LLC, 321 F.R.D. 636, 648 (D. Nev. 2017); *FTC v. Boehringer Ingelheim Pharmaceuticals*, 778 F.3d 142, 149 (D.C. Dir. 2015); *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

However, litigation must at least be a motivating force in creating the document; otherwise, it does not receive work product protection.[46] And while a document prepared in part for ordinary business purposes can still garner work product protection, the burden is on the party claiming protection to show that the anticipated litigation was the "driving force" behind the preparation of the documents.[47]

### B. Analysis

Polaris's allegations do show that the anticipation of litigation was objectively reasonable. The November 13, 2021 ATV incident also involved an injury caused by defective installation of the Throttle Master, a defective installation which might have been prevented by more clear instructions. And as I explained, the ATV Owner's assurances that he contacted the company as "an alert for a probable product defect and not compensation," as well as the fact that he was compensated by his insurance company, count against Polaris but are not decisive.[48] As the ATV Owner's insurance company could have sued Polaris for reimbursement on his behalf and the statute of limitations had not passed by the time McAlpine requested the Instructions Review, anticipating litigation based on this accident was objectively reasonable.

---

[46] *Swepi*, 2020 U.S. Dist. LEXIS 200238, at *13 (citing *In re B & C Seafood LLC*, 431 F.Supp. 3d 533, 536 (D.N.J. 2019) (Documents "created for another purpose are not protected")).
[47] *In Re Professionals Direct Ins. Co.*, 578 F.3d 432 (6th Cir. 2009).
[48] Doc. 38 at 8.

However, Polaris has not shown that McAlpine's intent in commissioning the Instructions Review was anticipation of litigation from the ATV Owner. As I explained in my prior memorandum opinion, I am not persuaded by any "blanket statements"[49] regarding the primary intention in retaining ASE.[50] More persuasive would be allegations regarding the nature of McAlpine's request, her discussion with ASE consultants and Winkler, or information regarding McAlpine's intended use of the Instructions Review in the ATV Owner litigation. As it is, nothing in the record shows anything other than a business purpose for the Instructions Review.

Winkler describes a meeting with ASE consultants Frantz and Burhans on June 28, 2022 in his Declaration. Winkler's description of this meeting does not undermine this Court's understanding of the Instructions Review. According to Winkler:

> On June 28, 2022, I participated in a discussion addressing the November 23, 2021 Incident with Melissa McAlpine, and Jared Frantz and Charles Burhans, human factors consultants at Applied Safety and Ergonomics ("ASE"), a Rimkus Company, during which Melissa McAlpine requested that ASE conduct a safety review of the Kolpin Master Product Instructions.[51]

---

[49] *See* Doc. 36-2, McAlpine Declaration ¶8; Winkler Declaration, Doc. 40 ¶7.
[50] Doc. 38 at 5 (citing *Jones v. Swepi L.P.*, No. 2:19-cv-00050, 2020 U.S. Dist. LEXIS 200238, at *3 (W.D. Pa. Oct. 28, 2020) *and Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, F.R.D. 239, 246 (W.D. Pa. 2007) ("Blanket assertions are not enough to shift the burden to the party seeking discovery.")); *see also Jiminez v. All. Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007) (explaining in a different legal context that "[a]lmost all affidavits submitted in litigation are drafted by the lawyers rather than by the affiants.") (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995).
[51] Doc. 40 ¶2.

Assuming Winkler's description of the meeting to be accurate, it establishes only that the ATV Owner's accident was discussed at the meeting. Showing that an underlying incident was discussed while preparing a report or even including that incident in the report itself does not necessarily show that the report was prepared in anticipation of litigation relating to that incident.[52] Even showing that a report was prompted by an underlying incident does not necessarily show that it was prepared in anticipation of litigation. The evidence supports Martz's assertion that the Instructions Review was either a routine review at which the ATV Owner's incident was discussed, or a "mitigative response to a prior safety incident"[53] in which Polaris decided to revise its instructions to prevent similar incidents from happening again, which is also a business purpose.[54]

---

[52] *See, e.g.*, *Banneker Ventures, LLC v. Graham*, 253 F.Supp. 3d 64, 71-73 (D.D.C. 2017) (although report discussing law firm's internal investigation included attention to the events underlying a subsequent lawsuit, the report was not produced in anticipation of litigation); *Tudor Ins. Co. v. Stay Secure Const. Corp.*, 290 F.R.D. 37, 40 (S.D.N.Y. 2013) (even though an insurance company prepared an incident report in response to a complaint, it was not protected because the insurer failed to show competent evidence that the report would not have been prepared in essentially the same form absent the litigation).

[53] Doc. 37 at 2.

[54] *See, e.g.*, *Addi v. Corvias Mgmt.-Army, LLC*, 339 F.R.D. 594, 598-99 (D. Md. 2021) (reports created by consulting companies in their roles assessing and trying to remediate mold issues at housing on a military base were not covered by work product doctrine); *Graham v. Ensco Offshore Co.*, No. 13-6588, 2015 U.S. Dist. LEXIS 24241, at *6 (E.D. La. Feb. 27, 2015) (Wilkinson, M.J.) ("[D]efendant again supplies no proof to establish any element of work product protection . . . and instead concedes in its opposition memorandum that the presentation was created, not in anticipation of litigation, but as a subsequent remedial measure report."); *Ortiz v. City of Fullerton*, No. 16-01499-DOC (DFMx), 2017 U.S. Dist. LEXIS 236282, at *16 (C.D. Ca. Mar. 17, 2017) (where an officer's use of force prompted litigation, a use of force report contained in a systematic review may have been a subsequent remedial measure, but the work product doctrine was "plainly inapplicable").

First, the document itself. The Instructions Review contains suggested revisions which might avoid accidents like the ATV Owner's,[55] but it contains no analysis, discussion, or mention of the ATV Owner's accident. Nor does it contain any discussion of why the instructions are defective, or what risks of accident the outdated instructions posed the ATV Owner, which could be relevant to Polaris's legal strategy.[56] Instead, the Instructions Review merely contains the original instructions and ASE's suggested revisions, without reasoning. The utility of these bare revisions for the business purpose of updating the instructions if obvious, but their utility in defending against the ATV Owner's potential claim is not apparent. No competent evidence distinguishes the Instructions Review from the generic kind of instructions review Polaris ordinarily obtains in the course of business.[57] In sum, the Instructions Review's focus is prospective, not retrospective.

---

[55] *Compare* Doc. 36 at 3-2 (explaining that a child operating an ATV with a Kolpin Throttle Master installed became injured when the Throttle Master became stuck in the open throttle position, causing the ATV to accelerate uncontrollably and crash into a tree) *with* Doc. 42 at 4 (suggesting a revision stating that "[i]nstalling Throttle Master without at least 1/8" clearance from all parts for its entire range of motion could result in the throttle being stuck in the open position, which may lead to loss of control")

[56] *See, e.g.*, *Gillespie v. Charter Comms.*, 133 F.Supp. 3d 1195, 1201 (E.D. Mo. 2015) (internal investigative reports regarding an employee's discrimination claims prepared at suggestion of employer's counsel were not protected by work product doctrine, as they contained no opinions or mental impressions indicating that they were prepared in anticipation of litigation).

[57] *See* Doc. 36 at 7 (stating that "Polaris does periodically review its warnings and instructions."); *Jolivet v. Compass Grp., USA, Inc.*, 340 F.R.D. 7, 17-18 (N.D. Tex. 2021) (Horan, M.J.) (explaining that 'if the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation"); *Tudor Ins. Co.*, 290 F.R.D. 37 (insurance company's incident report not protected by work product doctrine because insurer failed to show competent evidence that the report would not have been prepared in essentially the same form absent the litigation).

Indeed, this kind of "subsequent remedial measure" is generally inadmissible against defendants under the Federal Rules of Evidence because it is considered unduly prejudicial.[58] Of course, Polaris could obtain a report without the intent of using it at trial to formulate a defense. But while an expert's explanation of why instructions were defective might assist in anticipating opposing arguments, bare revisions serve no such purpose. So it is unclear what, if any, litigation purpose could conceivably be served by having the Instructions Review prepared. Moreover, the Instructions Review contains suggested revisions which appear unrelated to the ATV Owner's accident,[59] supporting the assertion that this report's business purpose was to revise the instructions to prevent litigation from any potential victim who could be harmed in the future, rather than defending litigation from the ATV Owner specifically.

Second, Frantz's email itself characterizes the Instructions Review as "feedback" on the instructions.[60] His email speaks to the purpose of ASE's Instructions Review: "We're happy to take another look over the instructions when you've had a chance to review and implement on your end."[61] "[R]eview and implement" refers to the business purpose of reviewing ASE's proposed revisions

---

[58] Fed. R. Evid. 407. This does not mean that Polaris could not offer the report itself, only that doing so would very likely be contrary to Polaris's own interests, and therefore not of any use in litigation.
[59] *See, e.g.*, Doc. 40 at 3 ("Revise to: Loose-fitting gear, such as gloves and long-sleeve clothes, could interfere with throttle control.").
[60] Doc. 42 at 1.
[61] *Id.*

and implementing them in the instructions included with future sales; but no mention is made of what use these instructions could have in the ATV Owner's case.

"Review and implement" is exactly what Polaris did. As even Polaris admits in its papers, the Instructions Review was "used to evaluate the adequacy of and provide recommendations regarding potential revisions to Polaris's Product Instructions for the Throttle Master."[62] The timing of the subsequent revision reaffirms the role that this business purpose played in the Instructions Review: ASE finished the Instructions Review on June 28, 2022, and a new version of Polaris' Throttle Master Instructions was incorporated into production on September 2, 2022.[63] Meanwhile, the ATV Owner's claim file had long been closed, and it was neither reopened nor updated with this report.[64]

## IV. CONCLUSION

It is unambiguous that at least one purpose of Polaris's Instructions Review was a business purpose, whereas little evidence points to a litigation purpose. Based on the Instructions Review, it appears that even if the ATV Owner's accident affected the *timing* of the Instructions Review, this review would have been prepared in the same form regardless of whether that threat of litigation existed. On these

---

[62] Doc. 36 at 2.
[63] Doc. 37 at 4; Doc. 36-2, McAlpine Declaration ¶10.
[64] Doc. 36 at 8; Doc. 36-2, McAlpine Declaration ¶9.

facts, I cannot find that Polaris has carried its burden to establish that the Instructions Review was prepared primarily in anticipation of litigation.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge