# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY K. MARTZ, Executor of the Estate of MARGARET E. MARTZ, | No. 4:22-CV-01390 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| POLARIS SALES, INC. d/b/a KOLPIN OUTDOORS, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

### SEPTEMBER 17, 2024

### I.     BACKGROUND

On September 7, 2022, Plaintiff, Larry Martz, Executor of the Estate of Margaret E. Martz, filed a three count Complaint against Defendant, Polaris Sales, Inc. d/b/a Kolpin Outdoors, Inc. ("Polaris").[1] Following the completion of fact discovery, Plaintiff filed a Motion for Leave to Amend Complaint on July 30, 2024. That motion is now ripe for disposition; for the reasons that follow, it is granted.

---

[1]   Doc. 1 (Compl.).

## II. STANDARD[2]

Federal Rule of Civil Procedure 15(a)(2) requires the court to "freely give leave [to amend] when justice so requires."[3] This is a "liberal standard."[4] Under Rule 15(a), "[a] district court may deny leave [to amend] upon finding undue delay, bad faith, prejudice to the opposing party, or futility."[5] "'The function of Rule 15(a) … is to enable a party to assert matters that were overlooked or were unknown at the time the party interposed the original complaint.'"[6]

## III. FACTUAL BACKGROUND

### A. The Accident

On September 12, 2020, Larry Martz and Margaret Martz attached a trailer to their 2019 Honda Rancher ATV to haul "brush around their property."[7] As Mr. Martz rode in the trailer, Mrs. Martz operated the ATV "at a slow crawl."[8] At some point, the Kolpin Throttle Master caused Mrs. Martz to lose throttle control.[9] The resulting sudden acceleration of the ATV threw Mr. Martz from the trailer and

---

[2] As the Case Management Order never set a deadline for the filing of amended pleadings, I do not analyze whether good cause to amend the complaint exists under Federal Rule of Civil Procedure 16(b)(4).
[3] *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 318 (3d Cir. 2020).
[4] *Id.* at 319.
[5] *Rogers v. Wilmington Trust Co.*, No. 21-1473, 2022 U.S. App. LEXIS 5653, 2022 WL 621690, at *13 (3d Cir. Mar. 3, 2022) (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).
[6] *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (quoting 6 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURES § 1473 (3d ed. 2019)).
[7] Doc. 1 (Compl.) ¶ 20.
[8] *Id.* ¶ 21.
[9] *Id.* ¶ 22.

caused the ATV to "run down [their] property's gravel driveway at full speed with the trailer fish-tailing behind it …."[10] Mr. Martz found Mrs. Martz "at the bottom of the driveway face down under the trailer with the ATV on its side nearby."[11] She was "unresponsive and bleeding from her head."[12]

Mrs. Martz was taken by ambulance to Mount Nittany Medical Center and then life-flighted to Geisinger Medical Center – Danville.[13] She died the following day from the "multiple blunt force injuries" she had sustained.[14]

### B.  The Relevant, Additional Allegations in the Proposed Amended Complaint

Defendant's internal policies required "fitment validation for all 'safety critical' products marketed as universal."[15] This fitment validation "determine[s] whether these products can be safely used with various makes and models of ATVs and [] avoid[s] misleading consumers."[16]

Polaris internally designated the Kolpin Throttle Master as a "safety critical" product and marketed it as a universally fitting product.[17] Defendant also knew of the Kolpin Throttle Master's "propensity to interfere with or get stuck on the handlebar grips of ATVs on which it is installed, depending upon the unique

---

[10] *Id.* ¶ 23.
[11] *Id.* ¶ 24.
[12] *Id.* ¶ 25.
[13] *Id.* ¶ 26.
[14] *Id.* ¶¶ 27-28.
[15] Doc. 51 (Motion for Leave to Amend Compl.), Ex. 6 (Redlined Proposed Amended Compl.) ¶ 31.
[16] *Id.* ¶ 32.
[17] *Id.* ¶¶ 29-30.

3

material, size, and proximity to the [Original Equipment Manufacturer] throttle of each respective handlebar grip."[18] But Polaris "never validate[d] or attempt[ed] to validate the [Kolpin] Throttle Master's universal fitment prior to" Mrs. Martz's death.[19]

Defendant's products were also supposed to "undergo Hazard Assessment Risk Analysis ("HARA") testing prior to being offered for sale to consumers."[20] HARA "testing is necessary to identify, understand, and quantify the risks that its products present to consumers."[21] But Polaris similarly "never perform[ed] HARA testing or similar risk analysis on the Kolpin Throttle Master prior to" Mrs. Martz's death.[22]

"Polaris knew that the Kolpin Throttle Master required fitment validation and HARA testing to protect the public from purchasing a potentially non-fitting and dangerous product."[23] Defendant also knew that the failure to "perform fitment validation and HARA testing on the 'safety critical' Kolpin Throttle Master would expose the public to unnecessary and foreseeable risk."[24] Instead of completing the appropriate testing, Defendant "willfully disregarded [its] safety policies …."[25]

---

[18] *Id.* ¶ 33.
[19] *Id.* ¶ 34.
[20] *Id.* ¶ 36.
[21] *Id.* ¶ 37.
[22] *Id.* ¶ 38.
[23] *Id.* ¶ 41.
[24] *Id.* ¶ 42.
[25] *Id.* ¶ 43.

4

Since Mrs. Martz's death, "the Kolpin Throttle Master has undergone fitment validation"; this led Polaris to remove "the term universal from the Kolpin Throttle Master product description" as the product did not fit Honda Rancher ATVs.[26] Defendant also performed HARA testing "on the Kolpin Throttle Master's alleged defective condition – interference or sticking on ATV handlebar grips – and assigned this condition an overall risk level of 3."[27] This risk level required "mitigation and associated escalation to Polaris' Safety Committee."[28] Finally, Polaris "substantially revised the Kolpin Throttle Master's instructions and warnings."[29]

## IV.   DISCUSSION

Given Plaintiff's representations about the information he learned during the course of discovery, it is appropriate to provide him leave to amend his complaint so long as it would not be futile to do so; therefore, I must determine whether the facts in the proposed Amended Complaint support a claim for punitive damages. I employ the motion to dismiss standard found in Federal Rule of Civil Procedure 12(b)(6) to complete this analysis.

---

[26]  *Id.* ¶ 35.
[27]  *Id.* ¶ 39.
[28]  *Id.*
[29]  *Id.* ¶ 40.

### A. Motion to Dismiss Standard

Under Rule 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp v. Twombly*[30] and *Ashcroft v. Iqbal*,[31] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[32] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a compliant must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[33]

Ordinarily, the Court limits its review under Rule 12(b)(6) to the facts contained in the Complaint. Here, the parties have provided the Court with additional information such as a copy of the Kolpin Throttle Master's packaging, a 2019 Polaris slide deck, and portions of John Winkler's deposition testimony.[34]

---

[30] 550 U.S. 544 (2007).
[31] 556 U.S. 662 (2009).
[32] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[33] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[34] I also note that the excised portions of Jhon Winkler's deposition testimony appear to have internal contradictions regarding what level, if any, of validation occurred of the Kolpin

6

While it is possible to consider outside materials, I decline to do so at this juncture. There appears to be disputed issues of fact regarding the relevance of these documents.[35] Should any dispositive motions be filed at a later date, the Court will consider the fully developed factual record at that time.

### B. Punitive Damages under Pennsylvania Law

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."[36] Punitive damages "are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct."[37] The Pennsylvania Supreme Court has "stressed that, when assessing the propriety of the imposition of punitive damages, [t]he state of mind of the actor is vital. The act, or failure to act, must be intentional, reckless or malicious."[38] "Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [the defendant] acted, or failed to act, as the case may be, in conscious disregard of the

---

legacy products at the time Polaris acquired the company. *See* Doc. 60 (Brief in Opposition to Motion to Amend Compl.), Ex. 1 (John Winkler Dep. Transcript).

35  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
36  *Hutchison v. Luddy*, 870 A.2d 766, 770 (2005) (internal citations and quotations omitted).
37  *Id.* (internal citations and quotations omitted).
38  *Id.* (internal citations and quotations omitted).

risk."[39] The Third Circuit has stated "that 'conscious disregard' is critical: '[A]n appreciation of the risk is a necessary element of the mental state required for the imposition of [punitive] damages.'"[40]

### C. Analysis

First, Mr. Martz must plausibly allege that Polaris "had a subjective appreciation of the risk of harm to which plaintiff was exposed."[41] Defendant is correct that this prong cannot be satisfied by information learned after Mrs. Martz's death. But contrary to what Polaris contends, sufficient facts have been pled to satisfy this prong.

Defendant's subjective appreciation is rooted in its alleged process failures. Polaris designated the Kolpin Throttle Master as a safety critical product and marketed it as a universal product. By doing so, Polaris' own policies required it to perform fitment validation and HARA testing to determine if the Kolpin Throttle Master "can be safely used with various makes and models of ATVs and to avoid misleading consumers" and to "identify, understand, and quantify the risks that its products present to consumers."[42] This failure is compounded by Defendant's alleged knowledge of the Kolpin Throttle Master's "propensity to interfere with or

---

[39] *Id.* at 772 (internal citations omitted).
[40] *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A.*, 801 F.3d 347, 360 (3d Cir. 2015) (quoting *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 n. 12 (Pa. 1985), *abrogated on other grounds by Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800 (Pa. 1989)).
[41] *Hutchison*, 870 A.2d at 770 (internal quotations and citations omitted).
[42] Doc. 51 (Motion for Leave to Amend Compl.), Ex. 6 (Redlined Proposed Amended Compl.) ¶¶ 32, 37.

get stuck on the handlebar grips of ATVs on which it is installed, depending upon the unique material, size, and proximity to the [Original Equipment Manufacturer] throttle of each respective handlebar grip."[43] These facts sufficiently establish this prong.[44]

Second, Plaintiff must plausibly allege that Defendant "acted, or failed to act … in conscious disregard of the risk." It is alleged that Polaris failed to conduct analysis and testing on a product that it knew had a propensity to interfere with the ATV handlebar grips. Despite the Defendant's contention, this is not simply a situation where it "knew of a possibility of accidents and did not undertake additional safety measures …."[45] Rather, the allegations suggest that Polaris consciously disregarded the risk posed by the Kolpin Throttle Master's interference with the handlebar grips by failing to follow its own procedures.[46] As alleged, Polaris' conduct arises to the level of outrageousness necessary to support a claim for punitive damages.

---

[43] Defendant argues that Plaintiff includes no facts to support this allegation. Courts in this Circuit have declined to dismiss a claim for punitive damages based on similar allegations of knowledge. *See e.g.*, *Smith v. Alien Flier, LLC*, 2:15-cv-1128, 2016 U.S. Dist. LEXIS 135067 (W.D. Pa. Sept. 30, 2016).

[44] Polaris' arguments to the contrary are, however, well-taken. As the Court is limiting its review to the allegations in the proposed Amended Complaint, I disregard the additional information underlying these arguments at this time. Defendant may raise these issues again should it choose to file any dispositive motions.

[45] *Livingston v. Greyhound Lines Inc.*, 2019 Pa. Super. 134, 308 A.3d 1122, 1130 (2019).

[46] As I have already indicated, I will not reach the issues raised by Defendant based on facts not contained in the proposed Amended Complaint. These arguments are more suited for any dispositive motions that may eventually be filed.

Case 4:22-cv-01390-MWB   Document 63   Filed 09/17/24   Page 10 of 10

### D. Request for Additional Fact Discovery

Finally, Mr. Martz also requests that the Court reopen fact discovery on "the factors considered by the jury in awarding punitive damages."[47] The Court's most recent Case Management Order that addressed fact discovery set a deadline of July 4, 2024.[48] To permit additional discovery, I would need to amend the Case Management Order. Since Plaintiff has failed to address the good cause needed under Federal Rule of Civil Procedure 16 to amend the Case Management Order,[49] I will not allow additional discovery on this issue.

### V. CONCLUSION

Plaintiff has plausibly alleged his entitlement to punitive damages. Accordingly, I will grant his Motion for Leave to Amend Complaint. But in doing so, I will not reopen fact discovery in this case. The parties should proceed in accordance with the deadlines previously set by the Court.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[47] Doc. 54 (Brief in Support of Motion for Leave to File Amended Compl.) at 11.
[48] Doc. 50 (Amended Case Management Ord.).
[49] *Premier Comp. Sols., LLC v. UPMC*, 970 F.3d 316, 318 (3d Cir. 2020).

10